**Anna T. SINGER and Leslie Singer, Plaintiffs-Appellants,**

**v.**

**STERLING DRUG, INC., Defendant-Appellee.**

**No. 18607.**

United States Court of Appeals, Seventh Circuit.

April 21, 1972.

Rehearing Denied June 5, 1972.

John Cadwalader Menk, Chicago, Ill., for defendant-appellee.

Before SWYGERT, Chief Judge, and KILEY and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

Plaintiffs Anna and Leslie Singer, husband and wife, brought this diversity action to recover damages for personal injuries alleged to have been caused by Anna Singer's ingestion of Aralen, a drug product of defendant Sterling Drug, Inc. Verdict and judgment were for Sterling, and plaintiffs appeal. We reverse and remand.

Anna Sterling began taking Aralen for a facial rash under a written prescription from Dr. Hoit, a dermatologist, in 1957. He had diagnosed the rash as discoid lupus erythematosus.[1] Between 1957 and 1960 the doctor also gave oral prescriptions to pharmacists for Anna Singer's use. She continued taking Aralen until 1964, when she received notice from a pharmacist that the drug had a deleterious side effect. She again went to Dr. Hoit.

Thereafter, in 1964, Anna Singer was examined by Dr. Potts, an opthalmologist, who found her "visual field was constricted, that side vision had been lost, and that in addition central vision was diminished." Later examination by Dr. Potts disclosed extensive damage to the rod cells of Anna Singer's retina. The suit before us followed, alleging that the blindness, chloroquine retinopathy, was caused by the ingestion of Aralen.

The complaint was in four counts. In counts 1 and 2 Anna Singer claimed damages of $1,200,000 because of blindness proximately caused by Aralen.[2] In

James A. Dooley, Chicago, Ill., for plaintiffs-appellants.

---

1. "A superficial inflammation of the skin marked by disklike patches with raised reddish edges and depressed centers, and covered with scales or crusts. These fall off, leaving dull white cicatrices." Dorland's Illustrated Medical Dictionary, 854 (24th ed. 1965).

2. Plaintiffs' theory under the strict liability counts was that Sterling's liability was caused by its failure to adequately warn of the danger of Aralen. Defendant's theory was that it was not liable because of the prescription drug exception to the strict liability doctrine expressed in Comment k,

counts 3 and 4 Leslie Singer claimed damages of $35,000 for loss, among other things, of his wife's companionship and for deprival of her services during her blindness. Counts 1 and 3 were based on strict liability, and counts 2 and 4 on negligence. The jury returned verdicts against plaintiffs, and the judgments appealed from followed.

## I.

Plaintiffs contend that the district court's instructions rendered recovery impossible.

■■ A. The district court erroneously instructed the jury on plaintiffs' strict liability counts in that the court used the term "wilfully and intentionally" in describing four allegations with respect to strict liability. The court also instructed the jury that plaintiffs had alleged in the strict liability counts that Sterling had not manufactured Aralen in accordance with its proper chemical formula. The court also stated that Sterling's answer framed the issue to be whether Sterling had been guilty of wilful and intentional misconduct.

The complaint alleged neither wilful and intentional misconduct on Sterling's part nor failure of Sterling to manufacture chemically pure Aralen. Under Indiana law the doctrine of strict liability does not require that Sterling be shown to have been guilty of wilful and intentional misconduct. Cornette v. Searjeant Metal Products, Inc., 258 N.E.2d 652 (Ind.App.Ct.1970); Perfection Paint & Color Co. v. Konduris, 258 N.E. 2d 681 (Ind.App.Ct.1970). The instruction placed a heavier burden on plaintiffs than was justified. The instruction was also faulty in placing the burden on plaintiffs of proving that the drug was not "in accordance with its chemical formula." This was not a theory of plaintiffs at trial. The giving of the instruction is clearly reversible error.

Defendant argues that its duty to warn is the same under both strict liability and negligence counts and that accordingly the erroneous instruction was cured. We are not persuaded. The effect of the instruction was to impose on plaintiffs a heavier burden to prove that element under the strict liability count than under the negligence count.

Sterling argues that the Singers must prove a failure by Sterling to warn about a known risk in taking Aralen before the doctrine of strict liability applies. Sterling relies on Comment k of § 402A of the Restatement (Second) of Torts (1965) for its position that all prescription drugs are covered by this exception to the strict liability doctrine.

■ Comment k establishes two classifications of drugs which are exceptions to the strict liability doctrine:

1) Drugs in which there is a known but apparently reasonable risk of injury and the user has been warned of the risk, i. e., the Pasteur vaccine for rabies.

2) Drugs which are new and experimental for which there is no knowledge of the risk and the user has been warned that this is a new and experimental drug.

If we were to adopt Sterling's reading of Comment k, we would have to exclude all prescription drugs from coverage under the doctrine of strict liability and apply the negligence standard to them.

We shall assume, arguendo, that the Indiana courts adopted Comment k as Indiana law when they adopted § 402A of the Restatement (Second) of Torts. We hold that there is insufficient evidence in this case to show that Aralen fell into either category of drugs which are exceptions to the strict liability doctrine because (1) there was no general warning until March of 1963 of the side effects of causing chloroquine retinopathy, and (2) Aralen was neither a new

§ 402A of the Restatement (Second) of Torts (1965). Plaintiffs expressly stated there was no contention that Aralen was

not manufactured according to its chemical formula or had a substance not in that formula.

and experimental drug nor a drug with a known but apparently reasonable risk.

■ B. In another instruction the court repeated the same clear error by stating, in effect, that if plaintiffs carried the onerous burden, assigned to them by the court, Sterling would be strictly liable unless Anna Singer "did affirmatively assume a risk" in taking Aralen. Any question of Anna Singer's "misuse" or other misconduct is a matter of defense. Perfection Paint & Color Co. v. Konduris, supra 258 N.E.2d at 688. Sterling asserted no defense of, and proffered no instructions upon, assumption of risk, and neither party considered it applicable here.

■ Application of the doctrine of assumption of risk presupposes knowledge of the danger which gives rise to the risk. Pfisterer v. Grishom, 137 Ind.App. 565, 572, 210 N.E.2d 75, 78–79 (1965). In Greeno v. Clark Equipment Co., 237 F.Supp. 427, 429 (N.D.Ind. 1965), relied on by Sterling, the court was discussing "misuse" and stated, "Incurring a *known and appreciated* risk is likewise a defense." (Emphasis added.) There is no evidence that Anna Singer had knowledge of the danger which would give rise to the risk. This error was repeated in still another instruction on the "two theories of liability." The court's instruction presupposes knowledge of plaintiff Anna Singer of the dangerous character of Aralen, but there was no such knowledge.

C. The court's assumed risk instruction also implied that the violation by Anna Singer's pharmacist of Indiana law by failing to keep records of prescriptions or by refilling the Aralen pre-scription without order of Dr. Hoit was evidence favorable to Sterling. This theory has been rejected. *Cf.* Sterling Drug, Inc. v. Cornish, 370 F.2d 82, 85 (8th Cir. 1966).

The court's giving of the prejudicially erroneous instructions requires granting a new trial to plaintiffs.

## II.

■ When the evidence was closed, plaintiffs moved to withdraw the issue of contributory negligence from the jury on the ground there was no evidence of negligence on the part of Anna Singer proximately causing her blindness. Sterling says there is evidence of lack of due care in Anna Singer's taking a large quantity of Aralen tablets for a seven month trip to Spain, Italy, Morocco and Tunisia, in July, 1963, and in Dr. Hoit's advice to avoid sun and take double dosage if she was exposed to sun. The advice of Dr. Hoit about double dosage was not misconduct on her part, and the evidence does not show to what extent she was exposed to sun. Sterling argued that all of its literature advised the the recommended "maintenance dosage" was one 250 milligram tablet a day and that Anna Singer took an excessive amount of Aralen by taking two tablets per day; but some labels on the Aralen bottles advised that the "usual dosage" was two 250 milligram tablets a day. We think the evidence was too thin for submission to the jury of the issue of contributory negligence.

## III.

■ The court erred in admitting evidence of an Indiana statute[3] requir-

---

3. Section 63–1219, IC 1971, 25–26–10–7 provides: All original prescriptions shall be numbered and filed in numerical and chronological order and preserved for a period of at least five [5] years in the pharmacy. Such files shall be open for inspection to any member of the pharmacy board or its duly authorized agent or employee. No prescription for any drug, the label of which bears the following legend "federal law prohibits dispensing without prescription," shall be refilled without written or oral authorization of the practitioner licensed by law to administer such drug. The pharmacist refilling such prescription shall record the date of refill, together with the amount dispensed and the dispenser's initials on the original prescription. Prescriptions for narcotics shall be governed by the laws relating to narcotics. [Acts 1959, ch. 155, § 7, p. 378.] Burns' Indiana Annotated Statutes.

ing pharmacists to file and keep prescription records for five years. There was evidence that Anna Singer's pharmacist had no written records of Dr. Hoit's prescriptions, after 1957. But the evidence had no bearing on defendant's liability and could have had a harmful effect on plaintiffs' case. The error in the court's ruing is pointed up by the discussion in Sterling Drug, Inc. v. Cornish, *supra*.

### IV.

■ Defendant was permitted to show a twenty minute motion picture with sound to the jury without first showing relevancy to the court. The film portrayed various types and stages of the disease lupus erythematosus, including terminal stages. It was designed to show the seriousness and incurability of Anna Singer's disease and to prove that retinopathy can be caused by lupus erythematosus. The court, upon objection that the film had relevancy neither to chloroquine retinopathy nor to the seriousness of Anna Singer's lupus erythematosus which had affected only facial skin, stated that the film would be stricken if not "connected up." The defendant failed to connect the movie to this case since there was no testimony that Anna Singer suffered from retinopathy caused by lupus erythematosus rather than chloroquine retinopathy. Yet the film was not stricken, and the failure to strike was error.

### V.

At the close of all of the evidence, the district court judge denied plaintiffs' motion for a directed verdict as to liability and their request that only the issue of damages be submitted since strict liability had been shown as a matter of law. Sterling contends that there is an issue of fact as to misuse of Aralen by Anna Singer; that the evidence shows that Anna Singer was warned by Dr. Hoit to avoid summer sun and yet proceeded to spend several months in "the

hottest sun" of Southern Europe and North Africa; and that she used Aralen so excessively that she exhausted her supply of the 100 tablets she brought for her seven month stay in Europe.

We have read the testimony relied on by Sterling and find no substantial evidence of Anna Singer's misuse of Aralen through excessive dosage or through "exposure to hot sun" during her European trip.

■ We conclude therefore that there was insufficient evidence that plaintiff misused Aralen during the relevant period. Consequently we hold that the district court erred in refusing to grant plaintiffs' motion for a directed verdict on the issue of strict liability since plaintiffs had proven as a matter of law their case under the theory of strict liability. The Singers proved that Sterling, with knowledge of the risks of Aralen causing chloroquine retinopathy, failed to give adequate warning to those who, like Dr. Hoit, would prescribe Aralen to their patients. The Singers proved a stronger case than required since the doctrine of strict liability would hold Sterling liable for manufacturing and marketing, without adequate warning, a dangerously defective product like Aralen.

Other questions raised we deem unnecessary to decide because in the trial of the damages issue they will not be relevant. Questions of other prejudicial comments by the judge or provocative conduct of plaintiffs' counsel inducing prejudicial comments are not discussed.

It is ordered that the judgment of the district court be reversed and the case remanded for a new trial as to damages. Under Rule 23 of the local appellate rules of this court—adopted and promulgated on April 4, 1972—this case on remand should be reassigned by the district court for trial before a judge other than the judge who heard the original trial, unless all parties request that the same judge retry the case.

Reversed and remanded.