(No. 50745.—

ROBERT E. WOODILL *et al.,* Indiv. and as parents and next friends of Eric Woodill, a Minor, Appellants, v. PARKE DAVIS & CO. *et al.,* Appellees.

*Opinion filed February 22, 1980.—Rehearing denied March 28, 1980.*

28

MORAN, J., GOLDENHERSH, C.J., and WARD, J., concurring in part and dissenting in part.

John D. Hayes & Associates, Ltd., of Chicago (John J. Lowrey and John D. Hayes, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith and John D. Cassiday, of counsel), for appellee Parke Davis & Co.

MR. JUSTICE CLARK delivered the opinion of the court:

The parents of a minor child brought this action to recover damages for injuries suffered by the child during the fetal stage, the injuries having allegedly been caused by a drug, administered to the mother during delivery of the child. In the first three counts, Parke Davis & Co., the manufacturer of the drug in question, was named as defendant. Counts I and II, sounding in strict liability in tort, sought, respectively, recovery on behalf of the child for his injuries and recovery for plaintiffs' mental anguish and distress. Count III sought the same recovery as count I, but was based on breach of warranty. Defendant's motion to dismiss all three counts was granted by the circuit court of Cook County. The appellate court affirmed that

portion of the order which dismissed counts I and II and reversed that portion of the order which dismissed count III. (58 Ill. App. 3d 349.) We granted plaintiffs leave to appeal.

The facts as stated by plaintiffs' first amended complaint are accepted as true for purposes of this appeal (*Court v. Grzelinski* (1978), 72 Ill. 2d 141, 146; *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 460; *Gertz v. Campbell* (1973), 55 Ill. 2d 84, 87), and are, substantially, as follows.

Ellen Woodill, the minor child's mother, entered Central Du Page Hospital as an obstetrical patient on or about November 22, 1973, at a time when the fetus was in high station. Pursuant to her physician's order for the inducement of uterine contractions, she was infused intravenously with the prescription drug, Pitocin. The product information disseminated to the medical profession by the defendant did not contraindicate the use of Pitocin for this purpose. On or about the same date, the child, delivered by the vaginal route, was born with brain damage, permanent blindness and quadriplegia. The complaint alleges that the use of Pitocin was the proximate cause of the child's injuries, and, with regard to the counts sounding in strict liability in tort, that defendant's failure to warn physicians and patients of the danger in using Pitocin while a fetus is in high station rendered the drug "not reasonably safe."

The issue of primary concern in this appeal is whether, in an action seeking to hold a defendant strictly liable for failure to warn of a danger attendant to the use of a product, the plaintiff must allege and prove that the defendant knew or should have known of the danger.

It is well recognized that a failure to warn of a product's dangerous propensities may serve as the basis for holding a manufacturer or seller strictly liable in tort. (*Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 551; see Annot., 53 A.L.R.3d 239 (1973); Noel, *Products De-*

*fective Because of Inadequate Directions or Warnings,* 23
Sw. L.J. 256 (1969).) The product is in a "defective condi-
tion unreasonably dangerous" (Restatement (Second) of
Torts, sec. 402A (1965)), not because of some defect
inherent in the product itself, but because of the absence
of an adequate warning accompanying the product.

The plaintiffs particularly rely upon *Lawson v. G. D.
Searle & Co.* (1976), 64 Ill. 2d 543, to support their posi-
tion that the defendant may be held strictly liable for
failure to warn, even absent knowledge or reason to know
of the danger. In *Lawson,* the plaintiffs sued, under strict
tort liability, to recover damages for death and injuries
allegedly resulting from the use of defendant's contra-
ceptive drug. This court upheld jury verdicts in favor of
the defendant. It is true, as plaintiffs point out, that the
jury instructions on the theory of strict liability which the
court quoted with approval (64 Ill. 2d 543, 547) did not
contain any requirement that the defendant have knowl-
edge or reason to know of the danger before it could be
held liable for failure to warn. The warning-related issue
decided by the court, however, was not whether the de-
fendant was required to issue a warning absent knowledge
or reason to know of the danger, but whether a warning
was, in fact, given and whether it was, in fact, sufficient.
The court held simply that there was sufficient evidence
from which the jury could have decided these two ques-
tions in defendant's favor. (64 Ill. 2d 543, 553.) Inas-
much as the court was not confronted with the knowledge
issue, the case is not dispositive of that issue.

In *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612,
this court joined the growing trend of decisions to remove
the last vestiges of the privity requirement in products
liability actions. The court further expressed its agreement
with the view that liability in such cases is governed by the
law of strict liability in tort, and not by the law of con-
tract warranties. (32 Ill. 2d 612, 621.) The arguments ad-
vanced to support the imposition of strict liability in food

cases were cited by the *Suvada* court as reasons for extending strict liability to products other than food. These arguments include the public interest in human life and health, the manufacturer's invitations and solicitations to use the product, its representations that the product is safe and suitable for use, and the justice of imposing the loss on the one creating the risk and reaping the profit. (32 Ill. 2d 612, 619.) If, as the court thought then, the foregoing arguments justified extending strict liability beyond food to a used reconditioned tractor, the product involved in *Suvada*, certainly they justify the application of strict liability to drugs.

In *Suvada* the court set forth the elements of an action sounding in strict liability in tort.

> "The plaintiffs must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." 32 Ill. 2d 612, 623.

Also, in connection therewith, the court quoted with approval section 402A of the Restatement (Second) of Torts (1965), which provides:

> "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> (a) the seller has exercised all possible care in the preparation and sale of the product, and
>
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." 32 Ill. 2d 612, 621.

In support of the decision of the appellate court, the defendant argues that comment *j* of this section requires that a manufacturer have knowledge or reason to know of the danger before it can be held liable for failure to warn. Comment *j* provides, in pertinent part:

> "*Directions or warning.* In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger. Likewise in the case of poisonous drugs, or those unduly dangerous for other reasons, warning as to use may be required." (Restatement (Second) of Torts sec. 402A comment *j* (1965).)

Specifically, defendant points to the language in the comment which provides that the seller is required to give warning if "he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge," of the danger. The plaintiffs argue, however, that to predicate the defendant's liability for failure to warn upon whether he knew or should have known of the danger is to revert to a negligence standard. The plaintiffs aver that the inquiry would then focus on the conduct of the manufacturer defendant rather than on the unreasonably dangerous condition of the product created by the failure to warn. There are decisions from other jurisdictions which support the plaintiffs' averment: *Little v. PPG Industries, Inc.* (1978), 19 Wash. App. 812, 579 P.2d 940, *aff'd as modified* (1979), 92 Wash. 2d 118, 594 P.2d 911; *Hamilton v. Hardy* (1976), 37 Colo. App. 375, 549 P.2d 1099; *Haugen v. Minnesota Mining & Manu-*

*facturing Co.* (1976), 15 Wash. App. 379, 550 P.2d 71; *Berkebile v. Brantly Helicopter Corp.* (1975), 462 Pa. 83, 337 A.2d 893. These decisions hold that failure to warn in strict liability, as opposed to negligence, imposes liability upon the defendant regardless of whether the manufacturer's conduct was reasonable (*e.g., Little v. PPG Industries, Inc.* (1978), 19 Wash. App. 812, 822, 579 P.2d 940, 947). Rather, knowledge of the danger is assumed under strict liability. *Berkebile v. Brantly Helicopter Corp.* (1975), 462 Pa. 83, 101, 337 A.2d 893, 902.

On the other hand, a line of decisions, including several in our own appellate court, have stated that knowledge is an essential element in a failure-to-warn case. *Mahr v. G.D. Searle & Co.* (1972), 72 Ill. App. 3d 540; *Knapp v. Hertz Corp.* (1978), 59 Ill. App. 3d 241, 246; *Peterson v. B/W Controls, Inc.* (1977), 50 Ill. App. 3d 1026, 1029; *Neal v. Whirl Air Flow Corp.* (1976), 43 Ill. App. 3d 266, 272; *Stanfield v. Medalist Industries, Inc.* (1975), 34 Ill. App. 3d 635, 639; *Bristol-Myers Co. v. Gonzales* (Tex. 1978), 561 S.W.2d 801, 804; *Nissen Trampoline Co. v. Terre Haute First National Bank* (Ind. App. 1975), 332 N.E.2d 820, *rev'd on other grounds* (1976), 265 Ind. 457, 358 N.E.2d 974; *Singer v. Sterling Drug, Inc.* (7th Cir. 1972), 461 F.2d 288; *Oakes v. E. I. DuPont de Nemours & Co.* (1969), 272 Cal. App. 2d 645, 650, 77 Cal. Rptr. 709, 713; *Phillips v. Kimwood Machine Co.* (1974), 269 Or. 485, 498, 525 P.2d 1033, 1039.

We think that the imposition of a knowledge requirement is a proper limitation to place on a manufacturer's strict liability in tort predicated upon a failure to warn of a danger inherent in a product. We do not agree with the plaintiffs that to require knowledge to be alleged and proved is to infuse negligence principles into strict liability. Indeed, liability based upon a failure to warn adequately of dangers (Restatement (Second) of Torts sec. 402A, comment *j* (1965)) is itself a doctrine borrowed from negligence. (See *Kirby v. General Paving Co.* (1967),

86 Ill. App. 2d 453, 457.) Yet the failure-to-warn theory in strict liability has been upheld as a distinguishable doctrine from its counterpart in negligence, based on the fact that it is the inadequacy of the warning that is looked to, rather than the conduct of the particular manufacturer, to establish strict liability. (*Little v. PPG Industries, Inc.* (1979), 92 Wash. 2d 118, 121-23, 594 P.2d 911, 914.) In a concurring opinion in *Little* it is stated:

> "Dean W. Page Keeton has articulated the applicable standard in the following manner: a product is unreasonably dangerous at the time of sale if the ordinary man, *knowing the risks and dangers actually involved in its use,* would not have marketed the product without supplying more information about the risks and dangers involved in its use and ways to avoid harm therefrom.
>
> Keeton, Products Liability—Inadequacy of Information. 48 Tex. L. Rev. 398, 403-04 (1970)." (Emphasis added.) (92 Wash. 2d 118, 127, 594 P.2d 911, 916.)

The opinion continues that, while reasonableness is implicit in the foregoing standard, it is an objective standard and is not to be read to mean whether the particular manufacturer or supplier was reasonable in the circumstances. (92 Wash. 2d 118, 127-28, 594 P.2d 911, 917.) The proper inquiry is whether it would have been reasonable for a drug manufacturer to have given a warning and whether that warning would have been adequate under similar circumstances. *Mahr v. G.D. Searle & Co.* (1979), 72 Ill. App. 3d 540, 562.

In a similar vein, a recent opinion in this court clarified this same point with regard to a case sounding in strict liability based on the defective design of a liquified-petroleum-gas tank car:

> "Any misapprehension that negligence is the standard of liability stems only from the injec-

tion of a 'reasonableness' element in determining whether a defective condition is unreasonably dangerous. As Prosser states, a strict liability design case resembles a negligence action because the reasonableness of the manufacturer's design choice is a key issue (Prosser, Torts sec. 96, at 644-45 (4th ed. 1971)). Despite the resemblance, however, the elements of the plaintiff's proof remain those of an action in strict liability." *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 439.

We perceive that requiring a plaintiff to plead and prove that the defendant manufacturer knew or should have known of the danger that caused the injury, and that the defendant manufacturer failed to warn plaintiff of that danger, is a reasonable requirement, and one which focuses on the nature of the product and on the adequacy of the warning, rather than on the conduct of the manufacturer. The inquiry becomes whether the manufacturer, because of the "present state of human knowledge" (Restatement (Second) of Torts sec. 402A, comment *k* (1965)), knew or should have known of the danger presented by the use or consumption of a product. Once it is established that knowledge existed in the industry of the dangerous propensity of the manufacturer's product, then the plaintiff must establish that the defendant did not warn, in an adequate manner, of the danger. Such a rule is entirely consistent with the principles of strict liability, as first recognized and adopted as applicable to all products in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612.

We emphasize that we do not view our holding that knowledge is an element of a failure-to-warn case to be a weakening of the statement in *Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443. There it was stated in refutation of the defendant's assertion that there was no way to detect serum hepatitis virus in whole blood that "[t]o allow a defense to strict liability on the ground

that there is no way, either practical or theoretical, for a defendant to ascertain the existence of impurities in his product would be to emasculate the doctrine and in a very real sense would signal a return to a negligence theory." (47 Ill. 2d 443, 453.) (Currently, an act is in effect which provides that the only bases for liability for the tortious injecting, transfusing or transplanting of human whole blood, blood products, and human bones, organs and tissue are in instances of negligence or willful misconduct. (Ill. Rev. Stat. 1977, ch. 91, par. 181.) However, that act is to be repealed effective July 1, 1981. (Ill. Rev. Stat. 1977, ch. 91, par. 184.)) Later in *Cunningham,* we distinguished between strict liability based on a defect in a product, such as was involved therein, and where, as here, a warning may be required because a product is unavoidably unsafe. We referred to the "exception" created by comment *k* to section 402A of the Restatement (Second) of Torts:

> " 'k. *Unavoidably unsafe products.* There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified \*\*\*. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. \*\*\*' [Emphasis in original.] We believe it clear that the exception set forth in the quoted comment relates only to products which are not impure and which, even if properly prepared, inherently involve substantial risk of injury to the user." 47 Ill. 2d 443, 456.

Therefore, the pleading requirement that a manufacturer know or should know of the dangerous propensity of the product is limited to complaints which allege a breach of the duty to warn adequately. Whether it is necessary to allege knowledge where liability is predicated on the defective design of the product is not before us.

We believe our holding in this case is justified because a logical limit must be placed on the scope of a manufacturer's liability under a strict liability theory. To hold a manufacturer liable for failure to warn of a danger of which it would be impossible to know based on the present state of human knowledge would make the manufacturer the virtual insurer of the product, a position rejected by this court in *Suvada*. (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 11.) Strict liability is not the equivalent of absolute liability. There are restrictions imposed upon it. For example, we have previously held that where an injury is not foreseeable, that is, objectively predictable, no liability will ensue based on strict liability. (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 12-13.) Also, where the plaintiff knows of the risk of injury presented by the use of a dangerously defective product but assumes the risk nonetheless, the manufacturer is absolved from liability. *Court v. Grzelinski* (1978), 72 Ill. 2d 141, 149; *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 430.

This court is acutely aware of the social desirability of encouraging the research and development of beneficial drugs. We are equally aware that risks, often grave, may accompany the introduction of these drugs into the marketplace. We simply think, however, in accordance with comments *j* and *k* of section 402A of the Restatement (Second) of Torts, that where liability is framed by the manufacturer's duty to warn adequately of dangers which may arise from the use of a drug, that liability should be based on there being some manner in which to know of the danger. Otherwise the warning itself, which is the focus of the liability, would be a meaningless exercise.

Since we are enunciating the requirement that knowledge must be alleged in a complaint for the first time in this opinion, substantial justice would seem to require that the plaintiffs be given an opportunity to amend their complaint to comply with this decision. We therefore affirm the appellate court as to count I and remand to the circuit court with directions to give the plaintiffs reasonable time to amend count I of their complaint.

The appellate court concluded, as an alternative ground for holding that count II failed to state a cause of action, that strict liability should not be extended to include recovery for the plaintiffs' emotional distress and mental anguish. (58 Ill. App. 3d 349, 355.) We agree, and we adopt the decision of the appellate court on this point.

We also adopt that portion of the court's opinion which held that count III of plaintiffs' complaint stated a cause of action for breach of warranty. 58 Ill. App. 3d 349, 355-56. See *Berry v. G.D. Searle & Co.* (1974), 56 Ill. 2d 548, 554.

For the foregoing reasons, the judgment of the appellate court is affirmed as to counts I, II and III, and this cause is remanded to the circuit court of Cook County with directions.

*Judgment affirmed; cause*
*remanded, with directions.*

MR. JUSTICE MORAN, concurring in part and dissenting in part:

I concur in the majority's judgment with respect to counts II and III. However, I dissent from that portion of the majority opinion which limits a manufacturer's liability under strict liability in tort for failure to warn of a danger inherent in its product to situations in which the manufacturer knows or has reason to know of the danger. The majority opinion

sets forth the applicable section of the Restatement, section 402A of the Restatement (Second) of Torts (1965), but then focuses on language appearing in a comment to that section. The comment provides that a seller is required to give warning if "he has knowledge, or by application of reasonable, developed human skill and foresight should have knowledge" of the danger. (Restatement (Second) of Torts sec. 402A, comment *j* (1965).) In focusing upon this language, the majority ignores the rule, set forth in the body of the section, that the seller is liable even though "the seller has exercised all possible care in the preparation and sale of his product ***." (Restatement (Second) of Torts sec. 402A(2)(a) (1965).) The quoted language from the comment directly conflicts with the rule itself, and, in my view, should not control. (Accord, *Little v. PPG Industries, Inc.* (1978), 19 Wash. App. 812, 822, 579 P.2d 940, 946, *aff'd as modified* (1979), 92 Wash. 2d 118, 594 P.2d 911; Noel, *Products Defective Because of Inadequate Directions or Warnings,* 23 Sw. L.J. 256, 268, 297 (1969).) Moreover, section 388 of the Restatement, which governs a supplier's duty to warn under negligence principles (*Dougherty v. Hooker Chemical Corp.* (3d Cir. 1976), 540 F.2d 174, 177-78; *Martinez v. Dixie Carriers, Inc..* (5th Cir. 1976), 529 F.2d 457, 464-65), expressly conditions liability upon the supplier's knowledge or reason to know of the danger. (Restatement (Second) of Torts sec. 388 (1965).) Thus, in requiring knowledge, the majority is ruling that defendant's liability is to be determined under a negligence standard, despite its pronouncements to the contrary.

In strict liability actions, the focus is on the condition of the product and not on the conduct of the manufacturer or seller. This is the feature which primarily distinguishes strict liability from negligence.

"In strict liability it is of no moment what defendant 'had reason to believe.' Liability arises from 'sell[ing] any product in a defective con-

dition unreasonably dangerous to the user or consumer.' It is the unreasonableness of the condition of the product, not of the conduct of the defendant, that creates liability." *Dougherty v. Hooker Chemical Corp.* (3d Cir. 1976), 540 F.2d 174, 177, quoting *Jackson v. Coast Paint & Lacquer Co.* (9th Cir. 1974), 499 F.2d 809, 812.

The majority cites several decisions which assertedly stand for the proposition that knowledge is an essential element in a failure-to-warn case. Of the cases cited which contain language supporting this proposition, however, only *Oakes v. E.I. DuPont de Nemours & Co.* (1969), 272 Cal. App. 2d 645, 77 Cal. Rptr. 709, squarely faced the issue. (The holdings in the remaining cases were not dependent upon the issue's resolution.) It is noteworthy that the California Supreme Court has cast doubt on the vitality of *Oakes,* an appellate court opinion, in *Cronin v. J.B.E. Olson Corp.* (1972), 8 Cal. 3d 121, 501 P.2d 1153, 104 Cal. Rptr. 433 (see *Midgley v. S.S. Kresge Co.* (1976), 55 Cal. App. 3d 67, 73, 127 Cal. Rptr. 217, 220-21), and, more recently, in *Barker v. Lull Engineering Co.* (1978), 20 Cal. 3d 413, 573 P.2d 443, 143 Cal. Rptr. 225. Finally, the last case which the majority cites, *Phillips v. Kimwood Machine Co.* (1974), 269 Or. 485, 525 P.2d 1033, is precisely contrary to the majority's stance, as pointed out below.

The majority quotes the standard propounded by Dean Keeton for application in failure-to-warn cases. Instead of supporting the majority's position, however, Dean Keeton's formulation, which does not condition liability upon the defendant's knowledge or reason to know of the danger, does just the opposite. This is evident upon reading Dean Keeton's general proposition, applicable in any case to determine whether a product is unreasonably dangerous, which appears in the article directly following the standard referred to by the majority:

"[I]f the sale of the product under all the circumstances

under which it .was marketed subjected the consumer or others to an unreasonable risk of harm, the seller is subject to liability, and it is not relevant that he neither knew nor could have known nor ought to have known in the exercise of ordinary care that the unreasonable risk actually existed. It is enough that had he known of the risk and dangers he would not have marketed the product at all or he would have done so differently." (Keeton, *Products Liability—Inadequacy of Information*, 48 Tex. L. Rev. 398, 404 (1970).)

This formulation thus removes any question of whether the defendant knew or should have known about the extent of the dangers resulting from the use of the product. Similarly, according to Professor Wade, the essential difference between negligence and strict liability is that, in the latter, it is not necessary for the plaintiff to prove either that the defendant negligently created the unsafe condition of the product or that he was aware of it. Wade, *Strict Tort Liability of Manufacturers,* 19 Sw. L.J. 5, 25 (1965).

The Oregon Supreme Court, in *Phillips v. Kimwood Machine Co.* (1974), 269 Or. 485, 525 P.2d 1033, recognized and approved the distinction between strict liability and negligence in the context of the same issue as that involved here. In expressly overruling a prior case which had concluded that there was no difference between negligence and strict liability for a product that was unreasonably dangerous for failure to warn of certain characteristics, the court stated:

"The article can have a degree of dangerousness because of a lack of warning which the law of strict liability will not tolerate even though the actions of the seller were entirely reasonable in selling the article without a warning considering what he knew or should have known at the time he sold it." (269 Or. 485, 498, 525 P.2d 1033, 1039.)

(See *Robbins v. Farmers Union Grain Terminal Association* (8th Cir. 1977), 552 F.2d 788, 794-95 n.15; *Hamilton*

*v. Hardy* (1976), 37 Colo. App. 375, 384, 549 P.2d 1099, 1107.) The same attitude is expressed in *Little v. PPG Industries, Inc.* (1978), 19 Wash. App. 812, 820-22, 579 P.2d 940, 945-47, *aff'd as modified* (1979), 92 Wash. 2d 118, 594 P.2d 911.

Mindful lest negligence concepts creep back into the law of strict tort liability, the California Supreme Court has gone so far as to purge the "unreasonably dangerous" factor from the list of essential elements which a plaintiff must prove. (*Cronin v. J.B.E. Olson Corp.* (1972), 8 Cal. 3d 121, 131-35, 501 P.2d 1153, 1161-63, 104 Cal. Rptr. 433, 441-43, followed in *Barker v. Lull Engineering Co.* (1978), 20 Cal. 3d 413, 417-18, 573 P.2d 443, 446, 143 Cal. Rptr. 225, 228.) Similarly recognizing the threatened dilution of the strict tort liability concept, the Pennsylvania Supreme Court, in a lead opinion, stated that when a plaintiff proved there was a defect in the product and that the defect caused his injury, he will have proved the product unreasonably dangerous. *Berkebile v. Brantly Helicopter Corp.* (1975), 462 Pa. 83, 96-97, 337 A.2d 893, 899-900; *cf. Azzarello v. Black Brothers* (1978), 480 Pa. 547, 558, 391 A.2d 1020, 1026 (jury instruction should not contain the term "unreasonably dangerous").

The majority maintains that the focus is on the nature of the product and the adequacy of the warning, rather than on the conduct of the manufacturer, and analogizes to the court's recent opinion in *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, a case in which Mr. Justice Ward and I joined in the dissent of the chief justice. *Rucker* was a design-defect case brought under strict liability in tort. There, a majority of the court held that evidence that the manufacturer complied with Federal regulations in designing its product, even though a safer alternative design was technologically feasible, is relevant in determining whether the product was in a defective, unreasonably dangerous condition. The dissent in that case was prompted, as here, by the majority's obfuscation of

the distinction between negligence and strict liability. I agree that if the plaintiff's complaint in *Rucker* had sounded in negligence, the defendant properly could have introduced evidence that it had complied with Federal regulations in designing its product. Even under a negligence theory, however, a manufacturer or seller is not immunized from liability because it has complied with governmental requirements for the manufacture and sale of its product. (See *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 381-82; *Burch v. Amsterdam Corp.* (D.C. App. 1976), 366 A.2d 1079, 1085-86, and authorities cited at nn. 17 & 19.) But when the theory of recovery is strict liability, evidence of the defendant's due care in complying with governmental requirements is irrelevant and has no place in the litigation. Similarly, the majority opinion in the instant case will open the door to allowing evidence of the defendant's use of due care in its testing procedures. This is directly at odds with the basic notion of strict liability, which permits the injured plaintiff to recover without the burden of proving negligence.

The majority's assertion that removal of the knowledge element would make the manufacturer the virtual insurer of the product is an overstatement. In my view, the manufacturer is not made an insurer when it is held answerable for injuries to someone for whom its product is intended, who uses it in the manner in which it was intended to be used, and whose injuries were proximately caused by an inherent danger in the product of which the user was unaware. The majority confesses to an awareness that risks, often grave, may accompany the introduction of beneficial drugs into the marketplace. To me, this suggests a greater need for protecting the unsuspecting and unprotected consumer, and for making recovery under strict liability available to him in fact, and not just in theory.

The majority further expresses concern that, if the knowledge element is eliminated, the warning itself would

be a meaningless exercise. This does not necessarily follow. The manufacturer's warnings and directions for the use of its product operate to establish the product's intended uses and, by the same token, operate to prevent unintended uses, many of which may be dangerous. When the use of the product causes injury, the warnings and directions often assume relevancy in determining the manufacturer's liability. Whether such warnings and directions are adequate to allow the manufacturer to avoid liability is ordinarily a question for the finder of fact, and must be dealt with on a case-by-case basis. Thus, it cannot be stated here what, if anything, the manufacturer could place on its product label or elsewhere to absolve itself from liability for harm caused by a danger inherent in its product in a situation in which the manufacturer had no knowledge of the danger. The manufacturer could, however, disclose under what circumstances its product has been found to be safe. Elimination of the knowledge element does not, in my opinion, necessarily foreclose the possibility that such a disclosure might enable the manufacturer to avoid liability.

In summary, to condition plaintiff's recovery under strict liability on his pleading and proving that defendant knew or had reason to know of the danger is to inject elements of negligence into plaintiff's cause of action. Unlike negligence, the elements of a strict product liability action generally do not include knowledge or culpable fault. Consequently, inasmuch as the plaintiff is not required to plead and prove knowledge of the danger in manufacturing-defect or design-defect cases, no greater requirement should be imposed on plaintiffs in cases in which the defect is the lack of warning.

GOLDENHERSH, C.J., and WARD, J., join in this partial concurrence and partial dissent.