**Patricia McELHANEY, Plaintiff,**

**v.**

**ELI LILLY & CO., An Indiana Corporation.**

**Civ. No. 80–3069.**

United States District Court,
D. South Dakota, C.D.

Nov. 25, 1983.

Charles Rick Johnson, Johnson, Eklund & Davis, Gregory, S.D., for plaintiff.

William Taylor, Woods, Fuller, Shultz & Smith, Sioux Falls, S.D., Andrew See, Lane D. Bauer, Larry R. O'Neal, Shook, Hardy & Bacon, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

Plaintiff Patricia Smith McElhaney is a "DES Daughter"; she was exposed to the prescription drug diethylstilbestrol (DES) *in utero* in 1949. She now complains of injuries allegedly caused by such prenatal exposure.[1] Defendant Eli Lilly & Co. admits that it manufactured and marketed the DES which plaintiff's mother ingested in 1949.[2] Plaintiff's cause of action is based solely on strict liability in tort. She contends that defendant's DES, as marketed in 1949, was in a defective and unreasonably dangerous condition to the consumer. Defendant in turn argues that DES is an "unavoidably unsafe" drug but was not, in 1949, unreasonably dangerous because its harmful side effects relevant here were not then foreseeable by Lilly.

When this case was called for trial plaintiff, contending that she had no burden to prove that Lilly knew, or should have known in 1949, of the side effects complained of, conceded she had no evidence on the foreseeability issue.[3] Lilly thereupon moved for a directed verdict on the ground that such proof was essential to plaintiff's cause of action. For the reasons now stated, defendant Lilly's motion will be granted and judgment will be entered accordingly.

### I.

In considering defendant's motion for directed verdict under Fed.R.Civ.P. 50(a), this court must construe all the evidence[4] in

---

1. A more detailed factual statement along with a brief historical background of DES is contained in a prior memorandum opinion respecting a different issue in this case. *See McElhaney v. Eli Lilly & Co.*, 564 F.Supp. 265, 267–68 (D.S.D. 1983).

2. Defendant made this admission after this court in *McElhaney*, 564 F.Supp. at 268–71 held that plaintiff's admitted inability to identify the maker of the DES in suit did not per se entitle Lilly and the then ten other drug company defendants to summary judgment against plaintiff.

3. [PLAINTIFF'S "OFFER OF PROOF"]
This case having been called for trial, plaintiff contends that Lilly's DES was not reasonably safe as marketed in 1949 with or without warnings and whether or not the injuries complained of were foreseeable in 1949, in order to establish her claim of strict liability under Restatement of Torts 402A.
If the court determines that the plaintiff has the burden of proof on the issue of whether or not defendant knew or should have known in 1949 that ingestion of DES might result in conditions such as those complained of by plaintiff, plaintiff concedes that she has no evidence and will offer none at trial respecting that issue, except that there were no warnings of the risk at issue given by Lilly in 1949.

4. The record before this court consists of: Plaintiff's "Offer of Proof", the depositions of plaintiff; the deposition and medical records of Zita Smith, plaintiff's mother; the deposition of Dwight McElhaney, plaintiff's former husband; the deposition of Thomas McEntee, a social worker who counseled plaintiff; the deposition of Dr. Dean Madison, an obstetrician-gynecologist who examined plaintiff; the deposition of Dr. Kenneth Noller, an obstetrician-gynecologist from the Mayo Clinic in Rochester, Minnesota, who also examined plaintiff; the 1949 Lilly Product literature or package insert pertaining to the use of DES as an aid in preventing certain types of accidents of pregnancy; the amended

the light most favorable to plaintiff, and must award plaintiff the benefit of all legitimate inferences from the evidence. *Moore v. Credit Information Corp. of America,* 673 F.2d 208, 210 (8th Cir.1982); *Dobson v. Bacon Transport Co.,* 607 F.2d 805, 806 (8th Cir.1979).

Plaintiff before trial stripped her complaint of all causes of action save one: strict liability in tort. In this regard she alleges that:

> Because of its carcinogenic side-effects and effect upon reproductive organs, DES is, and at all times relevant to this action was, an unreasonably dangerous and harmful drug when used for its advertised and intended purpose by pregnant women as a preventative of miscarriages.
>
> \*    \*    \*    \*    \*    \*
>
> By reason of ... having marketed and promoted DES in its defective and unreasonably dangerous condition, [defendant is] strictly liable to plaintiff for her DES caused injuries, losses and damages.

*Amended Complaint* ¶¶ 39, 41. Plaintiff does not claim defendant's DES is adulterated or impure, nor that it was defectively manufactured or designed.

## II.

■ The court in this case exercises diversity jurisdiction, 28 U.S.C. § 1332, and therefore applies the substantive law of South Dakota, *McElhaney,* 564 F.Supp. at 268. In the absence of a controlling rule established either by statute or by case decision, this court must apply the rule it believes the South Dakota Supreme Court would adopt. *Id.; Van Den Hul v. Baltic Farmers Elevator Co.,* 716 F.2d 504, 508 (8th Cir.1983).

■ The Supreme Court of South Dakota has adopted strict liability in tort, as expressed in the Restatement (Second) of Torts § 402A (1965). *Engberg v. Ford Motor Co.,* 87 S.D. 196, 205, 205 N.W.2d 104, 109 (1973); *Smith v. Smith,* 278 N.W.2d

155 (S.D.1979). However, that court has yet to decide a strict products liability case involving a prescription drug.

Ordinarily, under Section 402A, the manufacturer is held liable even though it "has exercised all possible care in the preparation and sale of [its] product." Restatement, *supra,* § 402A(2)(a). However, the Restatement has carved out an exception to this principle in cases involving "unavoidably unsafe" products:

> There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs.... Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician.

Restatement, *supra,* § 402A comment k. (Emphasis in original)

Implicit in comment k is the recognition that some products necessarily impose a degree of risk upon the user even though they are free from adulteration, impurity or manufacturing or design defect. Yet that risk is outweighed by the utility (judged at the time the given product is marketed) associated with such products. This is especially true with respect to prescription drugs:

> Unlike most other products, ... prescription drugs may cause untoward side effects despite the fact that they have been carefully and properly manufactured. For purposes of strict products liability, these drugs, aptly described as "[u]navoidably unsafe products", are not deemed defective or unreasonably dangerous so long as they are accompanied by proper directions for use and adequate warnings as to potential side effects.

---

complaint as well as defendant's answer; and the transcript of the pretrial proceedings held in

this case on July 18 and August 9, 10 of this year.

*Lindsay v. Ortho Pharmaceutical Corp.,* 637 F.2d 87, 90 (2d Cir.1980) (applying New York law citing comment k in support).

Although in *Singer v. Sterling Drug, Inc.,* 461 F.2d 288, 290–91 (7th Cir.) *cert. denied,* 409 U.S. 878, 93 S.Ct. 131, 34 L.Ed.2d 132 (1972), the court in dicta rejected the concept that all prescription drugs fall within comment k, a number of courts considering prescription drugs and comment k have decided otherwise.[5] This court, in an opinion by Judge Nichol, applied South Dakota law to a products liability case involving the prescription drug Aralen. *See Yarrow v. Sterling Drug, Inc.,* 263 F.Supp. 159 (D.S.D.1967), *aff'd* 408 F.2d 978 (8th Cir.1969).

The *Yarrow* plaintiff alleged that the defendant drug manufacturer improperly tested, manufactured and marketed the drug and also failed to warn of potential adverse side effects from use of the drug, of which the defendant knew or should have known at the time it was consumed by the plaintiff. *Id.,* 408 F.2d at 980. Although the suit was in negligence rather than strict liability it is pertinent, for in deciding whether the defendant had a duty to warn of potential adverse side effects, the district court looked to the strict liability principles embodied in Section 402A and found that "Comment (k) to Rule 402A discusses the precise problem presented here...." *Yarrow,* 263 F.Supp. at 161–62 (text of Section 402A and comment k cited in full). The court held that the defendant manufacturer had a duty to warn based on what it knew or should have known at the time the drug was administered to plaintiff. *Id.*

In cases involving prescription drugs "the manufacturer must warn the physician, not the patient". *Brochu v. Ortho Pharmaceutical Corp.,* 642 F.2d 652, 656 (1st Cir.1981). The prescribing physician acts as a learned intermediary between the patient and manufacturer. *See Dalke v. Upjohn Co.,* 555 F.2d 245, 247–48 (9th Cir.1977); *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1276 (5th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974). In this way, the consumer is able to determine the risks associated with the prescription drug.

In the present case, it is agreed that at the time plaintiff's mother ingested defendant's DES, there were no warnings given by defendant of potential adverse side effects such as those allegedly suffered by plaintiff. The issue presented is whether defendant owed a duty to warn in 1949 of such potential side effects. In order to determine whether defendant owed such a duty, reference is made again to Section 402A:

> In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning ... as to its use.... [T]he seller is required to give warning ... if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of ... the danger.

Restatement, *supra,* § 402A comment j.

Comments j and k., taken together, establish that defendant owed a duty to warn of potential adverse side effects of which it knew or reasonably should have known at the time plaintiff's mother ingest-

**5.** *See DeLuryea v. Winthrop Laboratories,* 697 F.2d 222, 227–29 (8th Cir.1983); *Brochu v. Ortho Pharmaceutical Corp.* 642 F.2d 652 (1st Cir. 1981) (applying New Hampshire law); *Dalke v. Upjohn Co.,* 555 F.2d 245 (9th Cir.1977) (applying Washington law); *Basko v. Sterling Drug, Inc.,* 416 F.2d 417, 425–27 (2d Cir.1969) (applying Connecticut law); *Fellows v. USV Pharmaceutical Corp.* 502 F.Supp. 297, 300 (D.Md.1980) (applying Maryland law); *Chambers v. G.D. Searle & Co.,* 441 F.Supp. 377, 380–81 (D.Md. 1975), *aff'd per curiam* 567 F.2d 269 (4th Cir. 1977) (applying Washington, D.C. law); *Seley v.*

*G.D. Searle & Co.* 67 Ohio St.2d 192, 423 N.E.2d 831 (1981); *Woodhill v. Parke Davis & Co.,* 79 Ill.2d 26, 33–38, 37 Ill.Dec. 304, 308–310, 402 N.E.2d 194, 198–200 (1980); *Feldman v. Lederle Laboratories,* 189 N.J.Super. 424, 460 A.2d 203 (1983); *Ferrigno v. Eli Lilly & Co.,* 175 N.J.Super. 551, 420 A.2d 1305 (Super.Ct.1980); *Ortho Pharmaceutical Corp. v. Chapman,* 180 Ind.App. 33, 388 N.E.2d 541, 544–53 (1979); *Gaston v. Hunter,* 121 Ariz. 33, 45–49, 588 P.2d 326, 339–42 (Ct.App.1978); *Leibowitz v. Ortho Pharmaceutical,* 224 Pa.Super. 418, 430–35, 307 A.2d 449, 457–59 (1973).

ed the drug. This same standard has been employed by courts of other jurisdictions which have considered the scope of a prescription drug manufacturer's strict liability in tort. "Thus far the courts have tended to hold the manufacturer to a high standard of care in preparing and testing drugs of unknown potentiality and in giving warning; but in the absence of evidence that this standard has not been met, they have refused to hold the maker liable for the unforeseeable harm". W. Prosser, The Law of Torts, Section 99 at 661 (4th Ed. 1971); *see also* cases cited *supra,* note 5.

Whether this standard invokes a special and distinct variant of strict liability or rather a pure negligence concept, the result is the introduction of fault into the case. This is a necessary consequence of apportioning liability between two relatively innocent parties: the unknowing consumer and the unknowing manufacturer. "To hold the manufacturer liable for failure to warn of a danger of which it would be impossible to know based on the present state of human knowledge would make the manufacturer the virtual insurer of the product." *Woodhill v. Parke Davis & Co.,* 79 Ill.2d 26, 37 Ill.Dec. 304, 309, 402 N.E.2d 194, 199 (1980). The South Dakota Supreme Court has cautioned that Section 402A "does not make the manufacturer an absolute insurer against any injuries caused by his product." *Engberg v. Ford Motor Co.,* 87 S.D. at 205, 205 N.W.2d at 109. This court believes the South Dakota Supreme Court would apply comments j and k of Restatement Section 402A to this prescription drug case, in light of the absence of any evidence that Lilly knew of, or should have foreseen, in 1949, the potential adverse side effects of DES here involved.

### III.

■ Plaintiff contends that defendant has the burden of proof on the issue of whether defendant knew or should have known in 1949 that ingestion of DES might result in conditions such as those complained of by plaintiff. Plaintiff has cited no authority in support of her contention.

The discussion in Part II of this opinion reveals that defendant's liability under Section 402A must be premised upon a failure to warn of potential dangers in the use of its DES of which it knew or should have known, at the time. Defendant's DES is in a defective and unreasonably dangerous condition only if defendant has breached this duty to warn. In this regard, the South Dakota Supreme Court has recognized that:

> [T]he product itself need not be defective. Where a manufacturer or seller has reason to anticipate that danger may result from a particular use of his product, and he fails to give adequate warning of such a danger, the product sold without such warning is in a defective condition within the strict liability doctrine.

*Jahnig v. Coisman,* 283 N.W.2d 557, 560 (S.D.1979); *see Reyes v. Wyeth Laboratories, supra* 498 F.2d at 1274–75. In a strict liability case under Section 402A, the burden is place on the plaintiff to prove that the product was defective at the time it left the manufacturer's control. *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251, 256 (S.D.1976); *Engberg, supra* 87 S.D. at 205, 205 N.W.2d at 109.

Comment g of Section 402A supports this court's conclusion that plaintiff bears the burden in this case of proving that defendant knew or should have known, in 1949, that ingestion of DES under the circumstances here might result in the injury here alleged. Comment g provides, in pertinent part: "The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained."

The court concludes that defendant Lilly, in this case, had no duty to warn of adverse side effects of DES of which Lilly was unaware when Lilly, in 1949, sold the product as a prescription drug. Absent any proof by plaintiff that Lilly was, in 1949, aware or that it should have been aware of

the DES side effects now in suit, plaintiff, as a matter of law, is barred from recovery against defendant.