BETTY WITHERELL, Plaintiff-Appellant, *v.* J. I. WEIMER *et al.*, Defendants-Appellees.

Third District   No. 78-428

Opinion filed September 28, 1979.—Rehearing denied November 26, 1979.

James L. Hafele, of Peoria, for appellant.

Francis D. Morrisey and Terrence Johnson, of Baker & McKenzie, of Chicago, for appellee Ortho Pharmaceutical Corp.

Heyl, Royster, Voelker & Allen, of Peoria, for appellees J. I. Weimer and R. K. Taubert.

Mr. JUSTICE STENGEL delivered the opinion of the court:

On January 4, 1978, plaintiff Betty Witherell filed, in the Circuit Court of Tazewell County, personal injury actions against Drs. J. I. Weimer and R. K. Taubert, alleging negligence and against Ortho Pharmaceutical Corporation alleging negligence, strict liability and breach of warranty. Defendants Weimer and Taubert moved to dismiss the action against them, and defendant Ortho moved for summary judgment. Both motions were granted on the grounds plaintiff had failed to bring suit within the time limits allowed by the applicable statutes of limitation. We reverse and remand.

The pleadings and affidavits filed by plaintiff indicate that in 1966, pursuant to a prescription from Dr. Weimer, she began taking Ortho-Novum, a birth control pill manufactured by defendant Ortho. Shortly thereafter plaintiff began experiencing pain and spasms in her left leg. In March 1967, plaintiff consulted Dr. Weimer about the condition and was hospitalized by Weimer's associate, Dr. Taubert, who told her he thought she had a blood clot in her leg.

Plaintiff was released from the hospital on April 7, 1967, but the pain and spasms in her leg continued and progressively worsened until July 1972, when she was again hospitalized by Drs. Weimer and Taubert. During her hospitalization plaintiff told Dr. Weimer that she had heard

from other women that birth control pills could cause blood clots. According to plaintiff, Dr. Weimer assured her that the pills did not cause blood clots and that they would not harm her in any way. Weimer told plaintiff she no longer had blood clots in her leg and that the pain and spasms she continued to experience were caused by a muscle condition. The painful condition of plaintiff's leg continued after she was released from the hospital, and sometime in 1973, at the urgings of her mother, she quit taking the birth control pill for about a month. However, after being reassured by Dr. Weimer that it was not the cause of her leg problem, plaintiff resumed taking the pill.

Plaintiff was again hospitalized in May 1976 by Dr. Weimer, who again told her the problem with her leg was a muscle condition. While in the hospital, plaintiff asked Dr. Weimer to perform a veinogram on her leg, but Weimer refused, saying "Now there's nothing wrong with the veins in your legs." Plaintiff left the hospital and went to see Dr. Juco, a Peoria physician. After performing a veinogram on her legs, Dr. Juco, on May 22, 1976, told plaintiff she had thrombophlebitis, a condition of the vein marked by inflammation of the vein walls and the formation of clots and crusts of coagulated blood. Dr. Juco told plaintiff that the thrombophlebitis could have been caused by her use of the birth control pill, and he directed her to stop taking it.

In support of the motions to dismiss and for summary judgment, the defense presented affidavits from Drs. Weimer and Taubert, from two other doctors who had examined plaintiff, and from a hospital nurse. Drs. Weimer and Taubert admitted hospitalizing plaintiff in 1967 and 1972, but asserted that on both occasions they diagnosed plaintiff's condition as thrombophlebitis and fully explained the condition to her. The defendant doctors said they also hospitalized plaintiff in May 1976 for a leg problem which they diagnosed as unrelated to her earlier thrombophlebitis. In a responsive affidavit, plaintiff denies that Dr. Weimer or Dr. Taubert ever told her she had thrombophlebitis and claims the first time she ever heard the word thrombophlebitis was in 1976 when she was examined by Dr. Juco.

The affidavit of Dr. Francis Rafool indicated that he hospitalized plaintiff in June 1969 at which time she told him that about two years earlier she had a swelling of her left leg following thrombophlebitis and that she was taking birth control pills on the date of her examination by him, June 25, 1969. Plaintiff denies telling Dr. Rafool in 1969 that she had previously had thrombophlebitis and claims she told him only that she had a blood clot, which is what Dr. Taubert had told her.

According to the affidavit of Nurse Miriam Nafziger, plaintiff told her in May 1976 that she had suffered from pain and blood clots in her leg for the past nine years. Dr. Benito M. Camacho stated that plaintiff told him

in March 1977 that she had deep vein thrombosis in 1967, and that, at that time, it was thought to be related to her use of birth control pills.

Plaintiff admits telling Nurse Nafziger of her past trouble with her leg, but denies ever using the word thrombophlebitis. Plaintiff said she did not tell Dr. Camacho in 1977 she had thrombophlebitis in 1967, and that Camacho must have received such information from Dr. Juco, who had previously diagnosed plaintiff's condition in 1976, and who had referred her to Dr. Camacho.

In her complaint plaintiff alleges that Drs. Weimer and Taubert were negligent in failing to diagnose her condition of thrombophlebitis, failing to treat that condition properly, and continuing to prescribe birth-control pills for her despite the fact those pills were the likely cause of her thrombophlebitis. Plaintiff's negligence claim against Ortho is based on allegations that Ortho failed to give proper warnings as to the relationship between the pill Ortho-Novum and the condition of thrombophlebitis. Plaintiff bases her strict liability and breach of warranty claims on allegations that the pill Ortho-Novum was not reasonably safe for distribution and was not of merchantable quality. These allegations sufficiently stated causes of action against defendants Weimer and Taubert and against defendant Ortho. The question presented on review is whether plaintiff's actions were time barred.

The statute of limitations applicable to plaintiff's malpractice claim against defendant doctors is section 21.1 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 22.1):

> "No action for damages for injury or death against any physician or hospital duly licenced under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death."

Plaintiff's tort claims against defendant Ortho are governed by section 14 of the Limitations Act:

> "Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty, or for abduction, or for seduction, or for criminal conversation, shall be commenced within two years next after the cause of action accrued." Ill. Rev. Stat. 1977, ch. 83, par. 15.

■■ Section 2—725 of our Commercial Code controls plaintiff's breach of

warranty claim (*Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550). In pertinent part it provides:

"(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Ill. Rev. Stat. 1977, ch. 26, par. 2—725(1), (2).

We first consider whether plaintiff's negligence action against defendant doctors and strict liability action against defendant Ortho were barred under the two-year limitations of sections 21.1 and 14, respectively. To answer this question we must determine when the limitations periods began to run on plaintiff's claims. Plaintiff contends the two-year statutory periods should be computed from May 1976, when she first learned the true nature of the condition of her leg and the possible relationship between that condition and her use of the birth control pill Ortho-Novum. Defendants, on the other hand, contend the limitations period began to run in 1967, when plaintiff first knew of her ailment or, in any event, at some other time more than two years before the January 1978 date when plaintiff filed the present actions.

Prior to the late 1960's courts of this State consistently held that limitations periods began to run from the time the last act giving rise to a plaintiff's cause of action occurred. (*Roper v. Markle* (1978), 59 Ill. App. 3d 706, 375 N.E.2d 934.) The fact the plaintiff did not or could not have discovered his cause of action till a later time did not toll the statute. (*Mosby v. Michael Reese Hospital* (1964), 49 Ill. App. 2d 336, 199 N.E.2d 633.) This was a harsh rule which precluded relief to plaintiffs who, through no fault of their own, failed to discover their right to relief before the statutory period elapsed. (*Mosby.*) In *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, our supreme court ameliorated the harshness of the earlier rule by adopting a "discovery rule." In *Rozny*, the court held:

"[W]here the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he knew or should have known of the existence of the right to sue." (*Rozny*, 43 Ill. 2d 54, 70, 250 N.E.2d 656, 664.)

This "discovery rule" was incorporated by our legislature into section 21.1 and has been judicially applied to personal injury actions under section 14. Ill. Rev. Stat. 1977, ch. 83, par. 22.1; *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450; *Wigginton v. Reichold Chemicals, Inc.* (1971), 133 Ill. App. 2d 776, 274 N.E.2d 118.

■ Two distinct lines of cases have developed under the "discovery rule." These cases may be categorized generally as "traumatic injury" cases and "disease" cases. The essential question is the same in both instances, *i.e.* when was or should have plaintiff been aware of a right to sue; however, the limitations period begins to run at a different time under each line of cases, depending upon the nature of the injury. "Traumatic injury" cases involve situations where the injury is such that the plaintiff knows or should know that someone may be legally responsible for it. (*Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550; *Ilardi v. Spaccapaniccia* (1977), 53 Ill. App. 3d 933, 369 N.E.2d 144.) Thus in "traumatic injury" cases, the limitations period commences when a plaintiff learns of his injury. *Berry; Ilardi.*

"Disease" cases, on the other hand, involve injuries which do not themselves put the plaintiff on notice that someone may be legally at fault. In "disease" cases the limitations period does not commence when the plaintiff learns of his injury, but only after the plaintiff "knows or has reason to know that he or she has a physical problem *and also that someone is or may be responsible for it.*" (Emphasis added.) *Martinez v. Rosenzweig* (1979), 70 Ill. App. 3d 155, 162, 387 N.E.2d 1263, 1268; see also *Licka v. William A. Sales, Ltd.* (1979), 70 Ill. App. 3d 929, 388 N.E.2d 1261; *Cutsinger v. Cullinan* (1979), 72 Ill. App. 3d 527, 391 N.E.2d 177; *Kristina v. St. James Hospital* (1978), 63 Ill. App. 3d 810, 380 N.E.2d 816; *Roper; Wigginton.*

The case at bar clearly falls within the "disease" case category. Although plaintiff was aware in 1967 of the painful condition of her leg, that condition could easily have been the result of nonnegligent natural causes. (See *Licka.*) A person such as plaintiff, who is not trained in medicine, would have no reason to know the true condition of her leg or the possible relationship between that condition and the use of birth control pills. Thus, the question in this case is when did plaintiff know, or when should she have known, that the condition of her leg may have been caused by defendant doctors' negligence or defendant Ortho's defective product.

■■ Time of discovery is a question which should be decided by the trier of fact unless no set of facts alleged in the pleadings could be proved which would support relief. (*Licka; Kristina.*) In the instant case, plaintiff alleged that she did not discover the true nature of her condition or that the condition may have been caused by defendant doctors' negligence or

defendant Ortho's defective product until May 1976, when she was examined by Dr. Juco. If, in fact, plaintiff did not learn of her right to sue until 1976, her claims would not be time barred under sections 21.1 and 14. *Rozny*; *Roper*.

The pleadings and affidavits filed by defendants were not sufficient to rebut plaintiff's allegations as a matter of law. Defendants Weimer and Taubert claimed to have properly diagnosed plaintiff's condition as thrombophlebitis in 1967 and 1972. They said they "fully explained" the condition to plaintiff on both occasions. Plaintiff, however, in her counteraffidavit, denies that any diagnosis of thrombophlebitis was made by defendant doctors or that a full explanation of her condition was given to her by them. Plaintiff's denial of defendants' claims created a question of fact. Similarly, plaintiff denies telling Dr. Rafool in 1969 or Dr. Camacho in 1977 that her condition had been previously diagnosed as thrombophlebitis or that it was thought to be related to her use of the birth control pill, Ortho-Novum. Again, plaintiff's denial created a question for resolution by the trier of fact. We also note that the affidavit of Nurse Nafziger was totally consistent with plaintiff's claim that she did not know until 1976 the cause of the pain and swelling in her leg which she had been experiencing since 1967.

In her affidavit and answers to interrogatories, plaintiff admitted that she was told by other women in 1972 that birth control pills could cause blood clots and that she discontinued her use of the birth control pills for about a month in 1973 because of her mother's concern about the condition of her leg. However, plaintiff claims that on both occasions defendant Weimer assured her that the birth control pills were not causing the condition of her leg. Plaintiff's admissions were not sufficient to establish as a matter of law that she knew or should have known in 1972 or 1973 that her condition may have been caused by defendant doctors' negligence or defendant Ortho's product.

The relationship between a doctor and his patient is a special one in which both parties expect the patient to rely upon the doctor's judgment and expertise. To hold as a matter of law that plaintiff should have known that her use of birth control pills was causing the condition of her leg, despite her doctor's statements to the contrary, would be manifestly unrealistic and unfair. Such a holding would be in derogation of the "normal attitude of trust and confidence in the relationship between doctor and patient" which has been recognized by the courts of this State. *Fure v. Sherman Hospital* (1978), 64 Ill. App. 3d 259, 272, 380 N.E.2d 1376, 1386.

> "It is one thing to say that the doctor or hospital is not required to affirmatively disclose an error in a diagnosis or treatment reflecting

an honest mistake in judgment and that this does not amount to fraudulent concealment. It is an entirely different thing to say that the doctor or hospital has a right to set up the barrier of the statute of limitations to keep the facts from being known, if the patient's widow fails to discover that an error has been made, within two-years' time." *Fure*, 64 Ill. App. 3d 259, 271-72, 380 N.E.2d 1386. We do not mean to indicate that in every instance a plaintiff can be held to have discovered an actionable injury only after being advised of that injury by a doctor. However, we do believe that in a situation such as this, where plaintiff claims that her doctor consistently assured her the pill was not the cause of her condition, a question of fact is presented as to whether the warnings given plaintiff by her mother and other women could have been sufficient to make plaintiff aware of her causes of action.

■ Consequently, it was error for the trial court to hold as a matter of law that plaintiff's actions against defendant doctors and against defendant manufacturer were barred by the two-year provisions of section 21.1 and 14. Plaintiff has demanded a trial by jury, and it is that body which should answer the factual question of when plaintiff "discovered or should have discovered that [she was] ill as the result of some neglect or negligence on the part of another party or as the result of being wrongfully exposed to a defective product." *Wigginton*, 133 Ill. App. 2d 776, 779-80, 274 N.E.2d 118, 121; *Licka*; *Martinez*.

We must next determine if plaintiff's action against Drs. Weimer and Taubert is barred by that part of section 21.1 which provides:

"[I]n no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." (Ill. Rev. Stat. 1977, ch. 83, par. 21.1.)

Although the constitutionality of this provision is questionable (see *Anderson v. Wagner* (1978), 61 Ill. App. 3d 822, 378 N.E.2d 805, and *Woodward v. Burnham City Hospital* (1978), 60 Ill. App. 3d 285, 377 N.E.2d 290), we need not determine the constitutional issue in this case, for plaintiff alleges that the doctors' negligent treatment of her continued until May 1976, a date less than four years prior to the time she filed her instant action. Because the last alleged acts of negligence by defendants Weimer and Taubert occurred within four years of the time this suit was filed, section 21.1 cannot be invoked as a bar to the cause of action. *Martinez*.

Furthermore, because plaintiff alleged that she continued to use the birth control pill Ortho-Novum until May 1976, her breach of warranty claim against defendant Ortho is not time barred by section 2—725 of our Commercial Code. Ill. Rev. Stat. 1977, ch. 26, par. 2—725.

For the foregoing reasons, the judgment of the Circuit Court of Tazewell County is reversed, and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

STOUDER, P. J., and BARRY, J., concur.