**Anne NEEDHAM, Plaintiff-Appellee,**
v.

**WHITE LABORATORIES, INC.,
Defendant-Appellant.**

No. 80–1579.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1980.

Decided Jan. 27, 1981.

Rehearing and Rehearing En Banc
Denied April 27, 1981.

396

Richard J. Phelan, Chicago, Ill., for plaintiff-appellee.

William J. Harte, Chicago, Ill., for defendant-appellant.

Before FAIRCHILD, Chief Circuit Judge, BAUER, Circuit Judge, and DUMBAULD, Senior District Judge.*

BAUER, Circuit Judge.

In 1946 the Food and Drug Administration ("FDA") authorized defendant-appellant White Laboratories, Inc. ("White"), to market dienestrol, a synthetic estrogen, for the treatment of menopausal symptoms and suppression of lactation.[1] In 1950 the FDA authorized White to market dienestrol for treatment of threatened and habitual miscarriages.

Mary Needham, plaintiff-appellee Anne Needham's mother, took dienestrol in 1952 during her pregnancy with plaintiff. In early 1974 Dr. Jerome Warren informed Anne Needham that she had clear cell adenocarcinoma, a rare form of vaginal cancer. Needham claims that the dienestrol her mother took in 1952 is the proximate cause of her cancer.

The trial of this cause was trifurcated. A jury was impaneled to determine whether

---

* The Honorable Edward Dumbauld, Senior Judge of the United States District Court for the Western District of Pennsylvania, is sitting by designation.

1. In 1941 the FDA had authorized other drug manufacturers to market diethystilbestrol ("DES"), another synthetic estrogen, for use in the treatment of these two conditions. Although dienestrol and DES possess different chemical structures, they are both pharmacologically identical to natural estrogen. In 1947 the FDA authorized drug manufacturers to market DES for treatment of threatened and habitual miscarriages.

the Illinois statute of limitations[2] barred this suit. The jury found that the Illinois two-year statute of limitations did not bar plaintiff's cause of action. A new jury was impaneled to decide the liability and damages issues. That jury returned a verdict for plaintiff and, after the subsequent damages trial, awarded the plaintiff $800,000. White appeals. We reverse and remand.

## I

Before we reach the merits of this appeal, we must address Needham's claim that we lack jurisdiction to decide this case because White's notice of appeal was untimely.

█ The court of appeals lacks jurisdiction to decide an appeal if notice of appeal is not timely filed, *United States v. Robinson*, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960), and the appellate court cannot extend the time limitation. Fed.R.App.P. 26(b). Notice of appeal must be filed with the Clerk of the District Court within thirty days from the date of judgment unless a timely post-trial motion tolls the running of the appeal time. Fed.R.App.P. 4(a). Rule 4(a) delineates four post-trial motions, which, if timely filed, will toll the running of the thirty-day appeal time.[3] If any of these four types of post-trial motions is filed within ten days of entry of judgment, the thirty-day limitation is tolled and begins to run anew upon entry of the order denying or granting the post-trial motion. Fed.R.App.P. 4(a).

Defendant White filed a post-trial motion for judgment notwithstanding the verdict within ten days of the entry of judgment. This motion tolled the thirty-day limitation until entry of the district court order denying or granting the motion. The district court denied the motion on January 14, 1980, and the thirty-day time began to run anew, terminating on February 13, 1980. On February 4, 1980, White filed a motion for reconsideration of the January 14, 1980, denial of the motion for judgment notwithstanding the verdict.

█ A motion to reconsider an order denying a timely post-trial motion does not toll the thirty-day limitation period that began to run when the first post-trial motion was denied.[4] *Wansor v. George Hantscho Co., Inc.*, 570 F.2d 1202, 1206 (5th Cir. 1978), *cert. denied*, 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1979). *See also* 9 Moore's Federal Practice ¶ 204.12[1] at 4–67 (2d ed. 1980). Thus, defendant's notice of appeal filed on April 21, 1980, ninety-nine days after entry of the district court order

---

2. The United States District Court for the Northern District of Illinois had jurisdiction of this suit pursuant to 28 U.S.C. § 1332. The *statute of limitations of the state in which the federal court sits governs diversity suits. Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Thus, the Illinois statute of limitations governs in this case.

3. The four motions which will toll the notice of appeal limitation are (1) a motion for judgment notwithstanding the verdict pursuant to Rule 50(b) of the Federal Rules of Civil Procedure; (2) a motion to amend or make additional findings of fact pursuant to Rule 52(b) of the Federal Rules of Civil Procedure; (3) a motion to alter or amend the judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure; and (4) a motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Fed.R. App.P. 4(a).

4. Defendant White contends that this February 4 *motion was filed pursuant to Rule 60(b) of* the Federal Rules of Civil Procedure which permits the district court to relieve a party from a final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

A Rule 60(b) motion never tolls the notice of appeal time. *Browder v. Director, Department of Corrections of Illinois*, 434 U.S. 257, 263 n.7, 98 S.Ct. 556, 54 L.Ed.2d 251 (1978).

denying White's timely Rule 50(b) post-trial motion, was untimely, but since this case falls within the narrow exception recognized in *Thompson v. Immigration and Naturalization Service*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (*per curiam*), we have jurisdiction to decide this appeal.

Notwithstanding the requirements of Rule 4(a), the appellate court will have jurisdiction to decide an appeal which is untimely filed if the defendant relied to his detriment on the assurance of the district court that an untimely post-trial motion tolled the thirty-day notice of appeal time. *Thompson v. Immigration and Naturalization Service*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (*per curiam*). The defendant in *Thompson* filed a post-trial motion twelve days after entry of judgment. The motion thus was untimely and could not toll the running of the notice of appeal time. The Government, however, did not object as to the timeliness of the motion, "and the trial court specifically declared that the 'motion for a new trial' was made 'in ample time.'" 375 U.S. at 385, 84 S.Ct. at 397. The notice of appeal was filed within sixty days of entry of the denial of the post-trial motion, but not within sixty days of the entry of judgment.[5] The Supreme Court held that, where the defendant relies on the plaintiff's failure to object as to timeliness and on the district court's explicit assurance that the motion is timely, the defendant is entitled to have his appeal decided on the merits if notice of appeal is filed within the assumedly new limitation period that commenced when the district court ruled on the post-trial motion. *Id.* at 386–87, 84 S.Ct. at 398.

At the hearing on White's motion to reconsider conducted on February 5, 1980,

plaintiff's counsel informed the district court that the motion was timely.[6] White's counsel specifically asked the district court whether the motion to reconsider tolled the time for appeal, and the district court assured defendant that the motion tolled the appeal time until it disposed of the motion. The district court denied the motion for reconsideration on March 20, 1980. White filed notice of appeal on April 21, 1980, within the assumedly new limitation period.[7] Defendant White should not be penalized for relying on the district court assurance that notice of appeal filed within thirty days of its disposition of the motion to reconsider would be timely.

## II

### A

White claims that the Illinois statute of limitations bars this suit. The statute provides that "[a]ctions for damages for an injury to the person ... shall be commenced within two years next after the cause of action accrued." Ill.Rev.Stat. ch. 83, § 15. White contends that Needham's cause of action accrued when she learned of her injury. Because Needham learned of her injury on March 1, 1974, when her doctor informed her that she had vaginal cancer, White argues that this suit filed on March 22, 1976, was commenced after the two-year limit.

■ White raises this novel interpretation of the Illinois statute of limitations for the first time in this Court. White agreed below that Needham's cause of action accrued when she learned of her injury *and* knew or should have known that the dienes-

---

5. If the United States or any United States officer or agency is a party, notice of appeal must be filed within sixty days. If the Government is not a party, notice of appeal time is limited to thirty days. Fed.R.App.P. 4(a).

6. White claims that plaintiff has waived any objection as to the timeliness of this appeal. Timely filing of a notice of appeal is mandatory and jurisdictional, *United States v. Robinson*,

361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960), and, thus, can never be waived by the parties.

7. The thirtieth day was April 19, 1980, which was a Saturday. If the last day of the period is a Saturday, Sunday, or legal holiday, the period runs until the next business day. Fed.R.Civ. Proc. 6(a). Thus, the notice of appeal period terminated on Monday, April 21, 1980.

trol caused her cancer. SOL at 433, 456.[8] The trial court so instructed the jury without objection from defendant. SOL at 537. Having failed to object at trial, White has waived any argument on appeal. Fed.R. Civ.P. 51; *see United States v. White*, 607 F.2d 203, 205 (7th Cir. 1979); *Faulisi v. Daggett*, 527 F.2d 305, 310 (7th Cir. 1975). *See also Hoffman v. Sterling Drug, Inc.*, 485 F.2d 132, 138–39 (3d Cir. 1973).

█ Moreover, the trial court's instruction accurately states Illinois law. The Illinois Supreme Court, in interpreting the applicable statute of limitation provision, held that a cause of action accrues when the plaintiff knows or should know of the injury and the defendant's error. *Rozny v. Marnul*, 43 Ill.2d 54, 69, 250 N.E.2d 656, 666 (1969). *See also Anderson v. Wagner*, 79 Ill.2d 295, 312, 37 Ill.Dec. 558, 562–565, 402 N.E.2d 560, 564–67 (1979). In a case like Needham's where the plaintiff's injury is a disease,

> the limitations period does not commence when the plaintiff learns of his injury, but only after the plaintiff "knows or has reason to know that he or she has a physical problem *and also that someone is or may be responsible for it."*

*Witherell v. Weimer*, 77 Ill.App.3d 582, 587, 33 Ill.Dec. 43, 52, 396 N.E.2d 268, 272 (1979) (emphasis in original) (citations omitted). *See also Nolan v. Johns-Manville Asbestos & Magnesia*, 74 Ill.App.3d 778, 30 Ill.Dec. 307, 392 N.E.2d 1352 (1979), and cases cited therein. Thus, the instruction given in this case was proper.

**B**

█ White claims that the jury finding that Needham did not know of the connection between her injury and the dienestrol her mother took before March 22, 1974, is not supported by the record. We disagree.

Needham testified that she first learned of the possible connection between her injury and the dienestrol in May 1974. SOL at 297. Her mother testified that neither she

nor plaintiff knew of the relationship between the cancer and the dienestrol before May 1974. SOL at 261. The only evidence tending to prove that Needham knew or should have known of the connection between her injury and dienestrol before March 22, 1974, was the testimony of her father and her gynecologist, Dr. Jerome Warren. Needham's father testified that he knew of the connection between Needham's injury and the dienestrol on March 1, 1974, but that he did not discuss the possible connection with his daughter before March 22, 1974. SOL at 132, 143 & 188. Dr. Warren testified that he discussed the connection between the cancer and dienestrol with plaintiff and her mother at a meeting on March 2, 1974. SOL at 84. Plaintiff and her mother, however, testified that no meeting occurred on March 2, 1974, and Dennis Rauen testified that he was with Needham all day March 2, 1974. SOL at 230, 284, 395–99.

The jury's function is to resolve the conflicts in the testimony and weigh the credibility of the witnesses. Legally sufficient evidence in the record supports the jury's resolution of the conflicts in favor of the plaintiff, and we affirm its finding that this suit is not time-barred.

**III**

White claims that the district court erred in permitting Needham to introduce evidence that dienestrol was not effective in preventing miscarriages. We agree with defendant and reverse and remand. In ruling that inefficacy evidence was admissible, the district court erroneously interpreted Illinois case law and the comments to section 402A of the Restatement (Second) of Torts.

**A**

Section 402A of the Restatement (Second) of Torts, which the Illinois Supreme Court adopted in *Suvada v. White*

---

**8.** Reference to the record of the statute of limitations hearing will be indicated by "SOL at . . . . ."

*Motor Co.*, 32 Ill.2d 612, 621, 210 N.E.2d 182, 187 (1965), governs this cause of action. *See also Woodill v. Parke Davis & Co.*, 79 Ill.2d 26, 37 Ill.Dec. 304, 402 N.E.2d 194 (1980); *Cunningham v. MacNeal Memorial Hospital*, 47 Ill.2d 443, 266 N.E.2d 897 (1970). Section 402A provides that one who sells a product in a "defective condition unreasonably dangerous" is subject to strict liability for any harm caused by the product defect. A product may be in a "defective condition unreasonably dangerous" because the product is contaminated by an impurity or because the product is unaccompanied by a warning of the product's dangerous propensities or because, although the product is accompanied by a warning, the risk of danger outweighs the benefit attendant to use of the product.

*Cunningham v. MacNeal Memorial Hospital*, 47 Ill.2d 443, 266 N.E.2d 897 (1970), is the controlling Illinois Supreme Court decision concerning strict liability for a contaminated product. Cunningham contracted serum hepatitis after receiving a blood transfusion at MacNeal Memorial Hospital. The transfused blood contained serum hepatitis virus, an impurity that cannot be detected in the blood before it is transfused. The defendant argued that it should be exempted from liability because it was impossible to discover the impurity. The Illinois Supreme Court rejected defendant's claim and held that section 402A imposes strict liability even where the manufacturer or seller has exercised all possible care in the preparation and sale of the product. The court noted that

> [t]o allow a defense to strict liability on the ground that there is no way, either practical or theoretical, for a defendant to ascertain the existence of impurities in his product would be to emasculate the doctrine and in a very real sense would signal a return to a negligence theory.

47 Ill.2d at 453, 206 N.E.2d at 902.

Second, the manufacturer will be strictly liable if it fails to warn of a known risk inherent in the product. Comment *j* of section 402A explains that a product may be unreasonably dangerous if the manufacturer fails to warn of an inherent danger.

> [T]he seller is required to warn [of a danger], if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of . . . the danger. Likewise in the case of poisonous drugs, or those unduly dangerous for other reasons, warning as to use may be required.

> \* \* \* \* \* \*

> [A] product bearing such a warning, *which is safe for use if [the warning] is followed,* is not in defective condition, nor is it unreasonably dangerous.

Restatement (Second) of Torts, § 402A, Comment *j* (emphasis added).

In interpreting comment *j*, the Illinois Supreme Court in *Woodill v. Parke Davis & Co.*, 79 Ill.2d 26, 37 Ill.Dec. 304, 402 N.E.2d 194 (1980), held that a drug manufacturer is strictly liable for failing to warn of an inherent product danger only if the manufacturer had knowledge, or by the application of reasonable, developed human skill and foresight should have had knowledge, of the danger. *Id.* at 35, 402 N.E.2d at 200.

Third, a court will impose strict product liability even if a warning is given if the product remains unsafe when the warning is followed and the risk of danger outweighs any apparent usefulness of the product.

> There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warnings, is not defective, nor is it unreasonably dangerous. The

same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an *apparently useful and desirable product*, attended with a known but apparently reasonable risk.
Restatement (Second) of Torts, § 402A, Comment k (emphasis added.)

The Illinois Supreme Court has not decided a comment k products liability case. In deciding *Cunningham v. MacNeal Memorial Hospital*, 47 Ill.2d 443, 266 N.E.2d 897 (1970), the supreme court did, however, comment on the applicability of comment k. The court noted that comment k "relates only to products which are not impure and which, even if properly prepared, inherently involve substantial risk of injury to the user." *Id.* at 456, 206 N.E.2d at 904.

Other jurisdictions that have adopted section 402A have had occasion to interpret and apply comment k to cases before them. *See e. g., Werner v. Upjohn Co., Inc.*, 628 F.2d 848 (4th Cir. 1980); *Reyes v. Wyeth Laboratories*, 498 F.2d 1264 (5th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir. 1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir. 1968). The Fifth Circuit's decision in *Reyes v. Wyeth Laboratories*, 498 F.2d 1264 (5th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct.

687, 42 L.Ed.2d 688 (1974), provides the most insightful analysis, which we adopt.

Anita Reyes developed poliomyelitis two weeks after she received the Sabin live poliomyelitis vaccine. She sued Wyeth Laboratories, the vaccine manufacturer, alleging that it had breached its duty to warn of the risk inherent in the vaccine. Section 402A governed. The court held that the vaccine was an "unavoidably unsafe product," and, thus, comment k applied. The court noted that "an unavoidably unsafe product is neither defective nor *unreasonably* dangerous if such a product is 'properly prepared, and is accompanied by proper directions and warnings.'" 498 F.2d 1274 (*quoting* Restatement (Second) of Torts, § 402A, comment k) (emphasis in original). The court adopted a two-step analysis. Once it is determined that the product is unavoidably unsafe and that the danger is warned against, it must be determined whether the product is so unsafe that marketing it at all is "unreasonably dangerous per se." In order to decide whether the product is unreasonably dangerous per se, a court must balance the utility of the product against its dangers. If the product's usefulness outweighs its risk of danger, it must be determined whether the manufacturer sold the product with sufficient safeguards and warnings.

The court in *Reyes* found that the vaccine was unavoidably unsafe because the live poliomyelitis virus, which is the essence of the vaccine, always presented the danger of causing poliomyelitis. It also found that Wyeth had enclosed a circular warning of the danger with the vaccine. Using its two-step analysis, the court held that the vaccine's usefulness—prevention of paralysis—far outweighs the statistically miniscule risk that the vaccine may cause poliomyelitis. Thus, it is not unreasonably dangerous per se. The court found, however, that Wyeth had failed to provide adequate warnings of the risk attendant to use of the vaccine and held Wyeth strictly liable under comment k. *Accord, Davis v. Wyeth Laboratories*, 399 F.2d 121 (9th Cir. 1968).

## B

The district court ruled that evidence that dienestrol was ineffective in preventing miscarriages was admissible because it was relevant to refute an affirmative defense based on comment k of section 402A. *Needham v. White Laboratories, Inc.*, No. 76 C 1101 (N.D.Ill., Aug. 13, 1979) (order denying pre-trial motion to exclude efficacy evidence). This ruling reflects a misunderstanding of the scope of comment k. A comment k defense is available only where the manufacturer warned of the danger, yet the product remains dangerous even if the warning is followed. In such a case, the manufacturer is exempted from strict liability only if the apparent usefulness of the product outweighs its known risk. *Singer v. Sterling Drug, Inc.*, 461 F.2d 288, 290 (7th Cir.), *cert. denied*, 409 U.S. 878, 93 S.Ct. 131, 34 L.Ed.2d 132 (1972). Since the usefulness of the product must outweigh the product risk before a comment k defense is available, evidence of product efficacy is relevant in a comment k case.

 White's defense throughout this case has been that it did not know of the dangerous propensity of dienestrol. No warning accompanied the drug. Thus, comment k, by its terms, could not provide a defense in this case. *Filler v. Rayex Corp.*, 435 F.2d 336, 338 (7th Cir. 1970). *See also Toole v. Richardson-Merrell Inc.*, 251 Cal. App.2d 689, 60 Cal.Rptr. 398 (1967). Accordingly, White never attempted to assert an affirmative defense based on comment k. Rather, White correctly argued that comment j governed this cause of action for the dispositive issue in this case is whether White should be held liable for its failure to warn of the risk of cancer to the offspring of pregnant women who used dienestrol. If White knew, or by the application of reasonable human skill and foresight should

have known, of the risk of cancer, White is liable to Needham for its failure to warn. *Woodill v. Parke Davis & Co.*, 79 Ill.2d 26, 37 Ill.Dec. 304, 402 N.E.2d 194 (1980). Because White failed to warn, comment k could not apply in this case, and evidence of the efficacy, or inefficacy, of dienestrol was irrelevant.

Alternatively, the district court ruled that efficacy evidence was admissible because it was relevant to prove that dienestrol was defective. The court held that an ineffective product is a defective product citing *Cunningham v. MacNeal Memorial Hospital. Needham v. White Laboratories, Inc.*, No. 76 C 1101 (N.D.Ill. Mar. 19, 1980) (order denying post-trial motion to reconsider). We disagree. *Cunningham* held that a product that contains an adulterating impurity is defective. 47 Ill.2d at 454, 456, 266 N.E.2d at 902, 904. Plaintiff does not claim that the dienestrol her mother took in 1952 contained any impurity. Thus, *Cunningham* does not govern this case. Nothing in *Cunningham* supports the district court's interpretation of section 402A.

Of course, the error in admitting the efficacy evidence alone is not sufficient ground for reversal if the error was harmless. Our reading of the record convinces us, however, that this error was not harmless, Fed. R.Civ.P. 61, and, consequently, we reverse.

The trial court instructed the jury that it could find White liable if it found either that White knew or should have known that dienestrol could cause cancer in female offspring of the pregnant user *or* if it found that dienestrol was ineffective in preventing miscarriages.[9] The jury did not return a special verdict, so we cannot discern if it held White liable solely because it found that dienestrol was ineffective. Section 402A does not impose strict liability based on the theory that an ineffective product is

---

**9.** The court instructed the jury that:

[t]he plaintiff has the burden of proving by a preponderance of the evidence each of the following propositions in count 1 of her complaint. First, that the defendant knew, or reasonably should have known, in 1952 that Dienestrol could cause cancer to the female offspring of a person who was using it to

prevent a miscarriage, or that Dienestrol was not apparently useful and desirable in 1952 in preventing miscarriages.

And second, that the plaintiff was injured, and third, that Dienestrol was a proximate cause of the plaintiff's injuries.

Tr. at 1616.

a defective product unreasonably dangerous. Therefore, we must reverse the jury verdict and remand for a new trial.

### IV

White claims that the trial court erred in permitting Needham's witness, Dr. Michael B. Shimkin, to read into evidence a list of medical article titles. Dr. Shimkin testified on direct examination that the titles were of articles published before 1952 that discussed the possibility of a relationship between estrogen and cancer. Tr. at 183. On cross-examination he testified that he had not read all of the articles. The trial court accepted the list into evidence, over White's objection, for the limited purpose of showing that White should have known in 1952 that dienestrol could cause cancer. Tr. at 269.

A trial judge may admit a summary of voluminous writings into evidence. Fed.R.Evid. 1006. Admission of summaries is a matter that rests within the sound discretion of the judge. *Baines v. United States,* 426 F.2d 833, 840 (5th Cir. 1970). *See also Pritchard v. Liggett & Myers Tobacco Co.,* 295 F.2d 292, 300 (3d Cir. 1961). Before a summary is admitted, the proponent must lay a proper foundation as to the admissibility of the material that is summarized and show that the summary is accurate. *Pritchard v. Liggett & Myers Tobacco Co.,* 295 F.2d at 301. Needham failed to satisfy either of these requirements.

First, Needham failed to lay a proper foundation as to the admissibility of the articles. The article titles were admitted for the limited purpose of showing that White should have known that dienestrol caused cancer because numerous articles published before 1952 tended to show a relationship between estrogen and cancer. Given this purpose, the articles were relevant only if they discussed a relationship between estrogen and cancer. Dr. Shimkin, the foundational witness, testified that he had not read all of the articles. Tr. at 243. He further testified that some titles on the list did not discuss the relationship between estrogen and cancer at all. Tr. at 254, 258, 265, 267. Dr. Shimkin's testimony failed to show that all the titles were relevant for the limited purpose of demonstrating notice of the relationship between estrogen and cancer.

In addition, Needham failed to show that the list of articles accurately summarized the material contained in the original articles. As a rule, one should not assume that titles are an accurate summation of article contents. *Pritchard v. Liggett & Myers Tobacco Co.,* 295 F.2d at 301. Since Dr. Shimkin had not read some of the articles, he was unable to testify that the list of titles accurately reflected and summarized what was contained in the articles.

Because Needham failed to lay an adequate foundation or to demonstrate that the titles were an accurate summary of the articles, the list of article titles should not have been admitted. The trial court abused its discretion in permitting the jury to consider this summary for the limited purpose of showing that White should have known of the relationship between estrogen and cancer.

### V

For the reasons discussed in the preceding paragraphs, we reverse the judgment of the district court and remand. Each party is to bear its own costs on appeal. The court below is ordered to grant White a new trial consistent with our rulings.

REVERSED AND REMANDED.

FAIRCHILD, Chief Judge, dissenting.

If we have jurisdiction to review the Judgment, I agree with reversal for the reasons well stated in Judge Bauer's opinion.

The more difficult question is whether we have jurisdiction to review the Judgment at all.

The Judgment was entered August 27, 1979. Defendant filed its motion for judgment under Rule 50(b) on September 5, 1979. It was timely filed and thus caused the time for appeal to begin anew on Janu-

ary 14, 1980, the date of entry of the district judge's order denying the 50(b) motion. Except for a possible thirty-day extension by the district court under Rule 4(a)(5), F.R.A.P., it does not appear that there were any further procedural steps which could extend or postpone the running of the time for appeal.

Although the applicable Rule seems clear enough, counsel and the district judge thought that defendant's filing of a motion to reconsider tolled the time for appeal.

The majority finds in *Thompson v. INS*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404, a "narrow exception" which validates the present appeal, apparently because of counsel's reliance on the assurance by the district judge that appellant's motion for reconsideration tolled the time. But the *Thompson* exception is too narrow to fit the situation before us.

In *Thompson* the Court predicated its holding not only on reliance on the district court's conclusion that a motion had been properly filed, but also upon appellant's performing "an act which, if properly done, postponed the deadline for the filing of his appeal."

In the case before us, the filing of a motion for reconsideration of the denial of the 50(b) motion was not an act which, if properly done, would postpone the deadline.

I join the majority in preferring that an appeal filed late in reliance upon a mistaken assurance by a district judge should be treated as timely filed. Perhaps the Supreme Court will broaden the *Thompson* exception. Perhaps it would not be too thin a fiction to treat the judge's assurance as a withdrawal of his previous denial, so that the 50(b) motion remained pending. Nevertheless, it seems to me the soundest view that the delay, though unfortunate, rendered the appeal untimely. It should therefore be dismissed.